IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOU-MATIC, LLC, a Wisconsin Limited Liability Corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>OLLIMAC DAIRY, INC., a California Corporation; TURLOCK DAIRY AND REFRIGERATION, INC., a California Corporation; R.J. FULLWOOD FUSION ELECTRONICS B.V., Netherlands Corporation; FULLWOOD LIMITED, United Kingdom Corporation; LELY RESEARCH HOLDING AG, a foreign business entity; and LELY INDUSTRIES NV, a foreign business entity,<br><br>　　　　　Defendants. | No. CV-F-05-203 OWW/SMS<br><br>MEMORANDUM DECISION GRANTING DEFENDANT OLLIMAC DAIRY, INC.'S MOTION TO REALIGN AND TO DISMISS(Doc. 58) AND DISMISSING ACTION FOR LACK OF SUBJECT MATTER JURISDICTION |

Before the Court is Defendant Ollimac Dairy, Inc.'s ("Ollimac) motion to realign the parties and dismiss this action

1

for lack of subject matter jurisdiction and to reconsider or clarify the Order filed on April 17, 2006, denying Ollimac's motion to dismiss for lack of subject matter jurisdiction.[1]

**A.   PROCEDURAL BACKGROUND.**

Bou-Matic, L.L.C., a Wisconsin limited liability corporation (Bou-Matic), filed its Complaint on February 14, 2005, seeking a declaratory judgment under 28 U.S.C. § 2201.  Subject matter jurisdiction is alleged to be diversity of citizenship and satisfaction of the $75,000 amount in controversy requirement. *See* 28 U.S.C. § 1332.

Ollimac moved to dismiss the Complaint on November 18, 2005 (Doc. 35).  The motion to dismiss was denied by Order filed on April 17, 2006 (Doc. 57).  Ollimac moved to reconsider and to re-align the parties and dismiss for lack of subject matter jurisdiction on April 17, 2006 (Doc. 58).  Bou-Matic filed an opposition to these motions on May 25, 2006 (Doc. 61).  Ollimac filed a reply on June 6, 2006 (Doc. 62).

**B.   BACKGROUND.**[2]

---

[1] Ollimac's motions raise other grounds for relief.  Resolution of these other grounds is not necessary and they are not addressed.
[2] Bou-Matic argues that Ollimac has not satisfied standards governing reconsideration, noting that the Court ordered supplemental briefing prior to issuing the April 17, 2006 Order on the issues of party re-alignment and the propriety of filing a complaint for declaratory judgment under the circumstances of this dispute.  Because the April 17, 2006 Order did not refer to those issues or the supplemental briefing, Bou-Matic contends, the Court impliedly ruled against Ollimac on these issues.  Ollimac urges reconsideration on facts and law previously presented to the Court.  As explained at the hearing on the instant motions, however, the Court did not see the supplemental briefs due to press of business and did not address the issues raised by the Court.

Bou-Matic is a dairy equipment supplier, distributing nationwide through independent local equipment dealers such as Defendant Turlock Dairy and Refrigeration, Inc. (TDR).  One of Bou-Matic's products is a robotic milking system (RMS), which reduces the need for human involvement in the milking process. (Doc. 1, Compl., ¶¶ 3-4).  Through TDR, Bou-Matic furnished a RMS to Ollimac, after lengthy negotiations, between April 2003 and August 2004.  (Decl. of Robert A. Morelli, ¶ 7).  The RMS did not perform to Ollimac's expectations, and Ollimac became concerned that the representations allegedly made by Bou-Matic during the prior negotiations were false.  Ollimac brought these concerns to Bou-Matic and requested assistance from Bou-Matic and TDR to ensure that the RMS would perform in the manner which Ollimac claims Bou-Matic represented it would.  (Morelli Decl., ¶¶ 8-12). During negotiations Bou-Matic filed the present federal action, seeking a declaration of its rights and responsibilities with respect to any liability for any misrepresentations in the furnishing, defect in design or operation of the RMS and allegedly resulting damage, regarding the rights and duties of Ollimac and other named Defendants, who participated in various capacities in the development, design, furnishing, installation and operation of the RMS.  (Doc. 47, Mem. in Opp., 2).

C.   **LEGAL STANDARD AND ANALYSIS**.

Ollimac concedes that the amount in controversy requirement

---

Reconsideration is appropriate under these circumstances, especially since the issue concerns subject matter jurisdiction.

for diversity of citizenship subject matter jurisdiction is satisfied.  Ollimac argues, however, if the parties are properly re-aligned, diversity of citizenship is absent.  Ollimac argues:

> For the purposes of re-alignment in [the federal declaratory judgment] case, there can be no reasonable doubt that [Defendant] Ollimac was the 'real' plaintiff at both the time the action was filed, at the time [Defendant] Ollimac's original motion to dismiss was brought before the Court. Further, [Defendant] Ollimac is and will remain the real plaintiff in the underlying dispute throughout the litigation. [Defendant] Ollimac is the plaintiff in the substantive state court action, seeking damages against the identical parties who are involved in the present declaratory relief action, including [Plaintiff] Bou-Matic.

Both Ollimac and Defendant TDR are California corporations. If Ollimac is re-aligned as a plaintiff in the federal case, subject matter jurisdiction will be absent because the parties will not be of completely diverse citizenship.  28 U.S.C. § 1332; *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir.2004)("[d]iversity jurisdiction under [Section 1332] requires complete diversity of citizenship; each of the plaintiffs must be citizens of a different state than each of the defendants").  In cases premised on diversity jurisdiction, inquiry must be made whether proper alignment of the parties might destroy complete diversity of citizenship.  *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir.2000).

"The generally accepted test of proper alignment is whether the parties with the same 'ultimate interests' in the outcome of the action are on the *same side*.  This test is meant to ensure

4

that there is an actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." 13B Wright, Miller & Cooper, Federal Practice and Procedure: *Jurisdiction* 2d § 3607 & n.7, citing *City of Indianapolis v. Chase Nat'l Bank of City of New York*, 314 U.S. 63, 69 (1941). [Emphasis added]. "The issue of alignment for purposes of diversity jurisdiction requires a court to 'look beyond the pleadings' to the actual interests of the parties respecting the subject matter of the lawsuit." *Prudential Real Estate Affiliates*, *supra*, 204 F.3d at 872. The Court "must align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'" *Id.* at 873.

For example, in *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1510 (9th Cir.1987), plaintiff Continental bought planes from manufacturer McDonnell Douglas Corporation (MDC). *Id.* at 1521. The contract contained an exculpatory clause in favor of MDC. After a fatal crash, Continental sued in both state and federal court. MDC and a parts supplier, Sargent Industries (SI), were defendants in the state case; two other parts suppliers, Goodyear (GY) and B.F. Goodrich (BFG), were defendants in the federal case. Continental later filed a second federal case against another parts supplier. MDC's attempt to remove the state case failed for lack of subject matter jurisdiction because neither a federal question nor diversity of citizenship was present, SI and Continental both being California

5

citizens. MDC then filed a declaratory judgment action against Continental, SI, GY and BFG. *Id.* at 1521-1523. The Ninth Circuit commenting that "[t]he critical question here is [SI]'s proper alignment" and that "[SI]'s alignment with MDC would destroy complete diversity", ruled:

> [SI]'s strongest contention below was that MDC's exculpatory clause barred Continental's claims against the parts manufacturers. Indeed, the district court so held. MDC took the same position because if Continental had been able to recover against [SI], [SI] could have sought indemnity against MDC. Thus both manufacturers had an identical interest in proving the validity and scope of MDC's exculpatory clause. Indeed, [SI] filed papers below supporting MDC's winning summary judgment motion, and the two parties arranged to be represented by the same counsel on this appeal. Thus, with respect to the primary matter in dispute, [SI] was in reality MDC's co-party against Continental. Diversity in MDC's action was therefore lacking.

*Id.* at 1523.

Here, the alignment of the parties for diversity purposes must be ascertained from "the principal purpose of the suit," and "the primary and controlling matter in dispute." *City of Indianapolis, supra*, 314 U.S. at 69. This is determined by the Complaint. Ollimac argues: In 2001, Bou-Matic and Ollimac entered into negotiations for the sale of a RMS, which failed and caused Ollimac damages. During these negotiations, Bou-Matic allegedly misrepresented the system's capabilities, leading Ollimac to conclude that Ollimac would profit by purchasing and installing the RMS. Based on its reasonable reliance on Bou-Matic's misrepresentations, Ollimac entered into four separate

finance lease agreements with the Bank of the West to lease RMS's for a period of ten years. The RMS's were sold to the Bank of the West by TDR and then leased to Ollimac. The RMS's did not perform as well as Bou-Matic had led Ollimac to expect, and Ollimac has suffered financial loss as a result.

Ollimac's Complaint in the Stanislaus County Superior Court is attached as Exhibit B to Ollimac's motion to dismiss. The state court Complaint alleges eight causes of action against various parties, including Bou-Matic and all other Defendants named in this federal declaratory judgment action.[3] The state Complaint alleges causes of action for (1) fraud and deceit against Bou-Matic, DEC International, Inc. (DECI), Dairy Equipment Company (DEC), and Madison One Holdings LLC (Madison One); (2) negligent misrepresentation against Bou-Matic, DECI, DEC and Madison One; (3) breach of contract (third-party beneficiary) against TDR; (4) breach of express warranty against Bou-Matic, DECI, DEC and Madison One; (5) breach of implied warranties against TDR; (6) strict products liability against Bou-Matic, DECI, DEC, Madison One, Fullwood, Lely and TDR; (7) negligence against all defendants; and (8) declaratory relief as to all defendants.

Bou-Matic's federal Complaint seeks "a judicial determination that Bou-Matic is not responsible for the alleged

---

[3] Other defendants in the state court action who are not parties to this federal action are DEC International Inc., Dairy Equipment Company, and Madison One Holdings LLC

problems Ollimac is experiencing with the RMS", alleging that "[a] judicial declaration is necessary and appropriate at this time under the circumstances so that Bou-Matic may ascertan its rights within this relationship chain between the supplier/installer, the dealer, the manufacturer, the Dairy Farm and ultimately the farm manager who is using the dairy equipment on the cows at the farm."

Ollimac alleges it has suffered damages and lost profits from defects in and defective operation of the RMS.  The primary matters in dispute in the suits in both courts among all parties is misrepresentation and products liability; whether the RMS failed and caused damage to Ollimac; whether Ollimac's RMS acquisition was induced by Bou-Matic's and TDR's fraud or misreprsentation; whether the alleged RMS failure was caused by faulty design, installation, or operation of the RMS; which parties are liable to Ollimac and the nature and extent any alleged damages to Ollimac.  Bou-Matic and Ollimac are direct and irrevocable antagonists regarding the primary matter in dispute, liability for damages caused by the RMS's failure and any misrepresentations which wrongfully induced the purchase. Their interests do not coincide for jurisdictional purposes. *Prudential Real Estate Affiliates*, *supra*, 204 F.3d at 873.  All the other parties are antagonistic to Ollimac, who seeks to hold all Defendants liable for Ollimac's damages, caused by their alleged roles in inventing and designing, promoting, selling, furnishing, installing, and failing to maintain the RMS.

Ollimac argues it is more properly a plaintiff in the federal declaratory judgment case because "Ollimac is the real plaintiff with respect to the underlying claims and the primary dispute at issue." Although Congress has granted federal courts the authority to issue federal declaratory judgments through the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1172 (9th Cir.2002), the underlying claims determine the true nature of the dispute and principal matter in controversy. The purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to avoid the threat of impending litigation. *Seattle Audubon Society v. Moseley*, 80 F.3d 1401, 1405 (9th Cir.1996). "The remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued." 10B Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2751; *see also McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir.), *cert. denied*, 385 U.S. 919 (1966).

Here, Ollimac alleges and Bou-Matic does not deny that damages have occurred. *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165 (7th Cir.), *cert. denied,* 395 U.S. 959 (1969), is analogous. There, a plaintiff general contractor sought declaratory relief against a sub-contractor and the sub-contractor's allegedly

9

injured employees to determine: (1) plaintiff was not directing the sub-contractor's employees when they were injured and that the employees had no cause of action against plaintiff for their alleged injuries; and (2) the sub-contractor was liable under the contract to indemnify plaintiff and hold plaintiff harmless if plaintiff was found liable to the employees.  *Id*. at 1167.  In affirming the District Court's dismissal of the declaratory judgment complaint, the Seventh Circuit observed:

> Regarding the individual defendants, we are of the opinion that to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tort-feasor would be a perversion of the Declaratory Judgment Act.

*Id*.  The Seventh Circuit ruled plaintiff "failed to demonstrate how the allowance of the instant declaratory judgment action would effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status[,] and other legal relations," because, as here, all the alleged injury had already accrued.  *Id.* at 1168.

Bou-Matic's pre-emptive federal declaratory relief action selects the forum and anticipates the underlying fraud, products liability and breach of contract claims that arise out of the purchase, installation and operation of the RMS.  Ollimac's plaintiff's case was not filed in the California Superior Court for Stanislaus County, asserting these primary claims until October 7, 2005, almost eight months following the filing of the federal declaratory judgment action on February 14, 2005.  Mr.

10

**Morelli's Declaration states at Paragraphs 14-18:**

> 14.  When verbal requests for BM's aid proved futile, I began to send letters to BM pleading for assistance and requesting BM to take all necessary steps to live up to the representations made prior to OLLIMAC entering into a lease for the AMS [sic].
>
> 15.  In these letters, I indicated that I wanted BOUMATIC [sic] and/or TDR to compensate me for the losses I had sustained, and that additional action would be taken if BOUMATIC [sic] and/or TDR continued to ignore my requests.
>
> 16.  During conversations with BOUMATIC and TDR personnel both before and after I sent these letters, when I voiced my complaints, I was informed that the EUROPEAN DEFENDANTS had been unresponsive to requests for assistance from BOUMATIC [sic], which was preventing addressing many of the problems OLLIMAC was experiencing with the AMS [sic].
>
> 17.  In February 2005, in response to my letters, OLLIMAC met with representatives of BOUMATIC and TDR at the OLLIMAC facility.
>
> 18.  Shortly after the meeting with BOUMATIC and TDR I received a letter from BOUMATIC's president, Ed Johnson, stating,
>
>> '*We think a dispute in court represents a failure of negotiation, and we don't want to find ourselves in court. Nevertheless, our sense is that you may have considered taking this step, and, therefore, regretfully, we have decided to establish some basics as to the issues that might be involved, and where they could be adjudicated if negotiation fails. To accomplish this, we have filed the attached Complaint in Federal District Court in the Eastern District of California.*'

Bou-Matic's letter is an express admission that it pre-

emptively sought to lay venue in the forum of its choice. At oral argument Ollimac's counsel represented that Ollimac had discontinued use of the RMS's. All the alleged injury has accrued. Declaratory relief can serve no useful purpose where the claims are now actualized. *McGraw-Edison Co.*, *supra*, 362 F.3d at 342.

At oral argument Bou-Matic argued that the proper alignment of all parties cannot be ascertained because TDR has not revealed its position on the issues in any pleading or response. This is disingenuous. Contrary to Bou-Matic's representation that TDR "could be" adverse to Bou-Matic if it takes a contrary position as to any of Ollimac's claims, TDR has answered Ollimac's state court complaint and has denied any liability to Ollimac on any theory of recovery Ollimac asserts. As logic suggests, TDR has not admitted furnishing and installing a defective RMS, denies it committed fraud or any other tort, denies it defectively maintained the equipment, breached any contract or any warranty. TDR and Ollimac are antagonistically aligned against Bou-Matic's claims. That there may be express or implied equitable indemnity among TDR, Bou-Matic, and the other defendants if Ollimac prevails, does not change this antagonism of interests over the primary matter which is a products liability dispute.

## CONCLUSION

For the foregoing reasons, Ollimac's motion to re-align the parties is GRANTED. By re-alignment, Ollimac is the real plaintiff in both this federal declaratory judgment action and

12

the state court action.  The alleged basis of subject matter jurisdiction, diversity of citizenship under 28 U.S.C. § 1332 does not exist.  Bou-Matic's complaint for declaratory judgment is DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Counsel for Ollimac shall prepare and lodge a form of order consistent with this decision within five (5) days following the date of service of this decision.

IT IS SO ORDERED.

**Dated:   September 28, 2007**                     /s/ Oliver W. Wanger
                                                   UNITED STATES DISTRICT JUDGE